JOSEPH AND NANCY AGONE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Agone v. Commissioner
Docket No. 2676-77.
United States Tax Court
T.C. Memo 1983-640; 1983 Tax Ct. Memo LEXIS 148; 47 T.C.M. (CCH) 107; T.C.M. (RIA) 83640; October 17, 1983. Johnathan E. Weinrich, for the petitioners. Jack H. Klinghoffer, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: The respondent determined that there are deficiencies in income tax and additions to tax due from the petitioners as follows: Addition to Tax
Year
Deficiency in Tax
Sec. 6653(b) [1]
1962
$11,032.90
$5,516.45
1963
1,949.65
974.83
1964
870.51
435.26
1965
2,016.20
1,008.10
1966
4,499.12
2,249.56
1967
5,625.70
2,812.85
1968
19,412.28
9,706.14
1969
2,848.74
1,424.37
When this case was called for trial the Court *150 was advised that the respondent had reached a basis of settlement of all issues with Nancy Agone.The Court was also advised that Joseph Agone is deceased, that at the time of his death he owned no assets, and that there will be no administration of his estate. 1a At that time the respondent moved under Rule 123(b) that the petition of Joseph Agone be dismissed with respect to the deficiencies set forth above for failure to prosecute. The respondent also moved under Rule 123(a) that a judgment of default be entered against Joseph Agone for the additions to tax under section 6653(b). The respondent, however, proceeded during the trial to put on proof with respect to the additions to tax and subsequently on brief withdrew his motion for judgment by default with respect to such additions. The issues remaining for our decision are: (1) should the respondent's motion to dismiss the petition as to Joseph Agone for lack of prosecution be granted with respect to the underlying deficiencies; *151 (2) is the addition to tax provided by section 6653(b) due from Joseph Agone for each of the years 1962 through 1969; and (3) are the deficiencies and the additions to tax due from Joseph Agone for any one of the years 1962 through 1969 barred by the statute cf limitations? FINDINGS OF FACT At the time they filed their petition, Joseph Agone and Nancy Agone resided in Patchogue, New York. Subsequent to the filing of the petition, Joseph Agone died and at the time of his death he owned no assets and there has been no personal representative appointed for and no administration of his estate. During the years 1962 through 1969 the petitioners were husband and wife and for each of such years they filed a timely joint income tax return with the District Director of Internal Revenue, New York, New York. On the returns, the petitioners reported gross income as follows: Gross
Taxable Year
Income Reported
1962
$ 6,682.95
1963
12,736.38
1964
12,841.16
1965
11,493.83
1966
19,453.42
1967
16,493.96
1968
18,188.90
1969
26,942.91
Total
$124,833.51
The income was reported from the following sources: Net
Other
Total
Expenses
Unidentified
Income
Year
Wages
Dividends
Interest
From
Income
Reported
Union [2]
1962
$ 6,682.95
$ 6,682.95
1963
8,589.10
$ 958.00
$3,189.28
12,736.38
1964
9,831.00
$ 1,347.44
1,662.72
12,841.16
1965
9,140.50
1,466.16
887.17
11,493.83
1966
17,594.55
1,241.78
617.09
19,453.42
1967
12,750.00
$1,960.45
1,783.51
16,493.96
1968
14,300.00
819.28
1,769.62
1,300.00
18,188.90
1969
18,475.00
2,758.32
5,709.59
26,942.91
Totals
$97,363.10
$5,538.05
$13,318.10
$3,762.26
$4,852.00
$124,833.51
*152 With the aforesaid income tax returns the petitioners paid income taxes as follows: Year
Income Tax
1962
$ 847.22
1963
2,183.46
1964
1,959.67
1965
1,532.64
1966
3,317.23
1967
2,190.54
1968
3,114.53
1969
6,170.14
Total
$21,315.43
Respondent audited the joint income tax returns of the petitioners for 1962 through 1969. During the audit it was established that for the years 1962 through a part of 1966 Joseph Agone was the business agent for Amalgamated Union, Local 5, Pizzeria Hero and Dining Room Employees Union, 11 E. 17th Street, New York, New York. For the balance of 1966 and for all of the years 1967, 1968 and 1969, he was the business agent for Local 11, Chain Service Restaurant, Luncheonette and Soda Fountain Employees Union, 236 W. 40th Street, New York, New York. In addition to being a business agent for these unions, Joseph Agone admitted during the audit that at least during 1962 he was engaged in certain gambling activities and during all of the years included in the audit he was involved in the building and demolition business. From 1962 through 1969 Nancy Agone was *153 a housewife and had no separate earnings. For the audit the petitioners failed to produce books of account and/or other records of their income-producing activities for the years 1962 through 1969. Consequently, the respondent determined their taxable income for such years through an analysis of their annual increases in net worth with an upward adjustment for nondeductible expenditures and a downward adjustment for nontaxable receipts, deductible expenditures and exemptions. With this analysis, which was made from the records of banks, public agencies, and other third parties, the respondent determined that on December 31 of each of the years 1961 through 1969 the petitioners had total assets and total liabilities as shown in the schedule below: Year
Total Assets
Total Liabilities
1961
$115,188.27
1962
145,820.90
1963
159,253.50
1964
165,599.55
1965
175,416.34
1966
186,725.63
1967
209,340.36
1968
253,468.61
$6,476.00
1969
270,061.04
6,476.00
From the above schedule it is apparent that on December 31 of each of the years 1961 through 1969 the petitioners had a net worth (total assets minus total liabilities) as follows: Year
Net Worth
1961
$115,188.27
1962
145,820.90
1963
159,253.50
1964
165,599.55
1965
175,416.34
1966
186,725.63
1967
209,340.36
1968
246,992.61
1969
263,585.04
*154 For each of the years 1962 through 1969 their net worth increased by the following amounts: Increase In
Year
Net Worth
1962
$37,462.56
1963
19,340.42
1964
16,445.81
1965
20,160.14
1966
33,137.09
1967
33,920.81
1968
61,912.89
1969
36,539.82
During each of the years 1962 through 1969 the petitioners made certain expenditures such as for income taxes, automobiles, groceries and other personal items which are not deductible for income tax purposes. These expenditures totaled as follows: Nondeductible
Year
Expenditures
1962
$6,829.93
1963
5,907.82
1964
10,099.76
1965
10,343.35
1966
21,827.80
1967
11,306.08
1968
24,260.64
1969
19,947.39
In arriving at their taxable income for each of the years 1962 through 1969, the petitioners are entitled to exclude from their receipts certain items such as the nontaxable portion of capital gains, the statutory exclusion with respect to dividends, and nontaxable insurance proceeds. They are also entitled to certain deductions such as interest paid and taxes on real estate. During the years under consideration, the exclusions and deductions to which they are entitled are as *155 follows: Exclusions
Year
And Deductions
1962
$702.33
1963
913.64
1964
1,126.62
1965
1,328.57
1966
1,500.29
1967
2,284.33
1968
2,650.30
1969
3,921.91
During each of the years 1962 through 1969 the petitioners were entitled under section 151 to three exemptions totaling $1,800 in each year.
When the annual increases in the net worth of the petitioners are adjusted upward for the aforesaid nondeductible expenditures and adjusted downward for the aforesaid allowable exclusions, deductions and exemptions, their correct taxable income and their correct income tax liability for each of the years 1962 through 1969 are as follows: Correct
Correct Income
Year
Taxable Income
Tax Liability
1962
$34,960.23
$11,880.12
1963
16,626.78
4,133.11
1964
13,519.19
2,830.18
1965
17,031.57
3,548.84
1966
29,836.80
7,816.35
1967
29,836.48
7,816.24
1968
57,462.59
22,526.81
1969
30,817.91
9,018.88
The taxable income of the petitioners for the years 1962 through 1969 was understated in the amounts shown below: Correct
Taxable
Understatement Of
Year
Taxable Income
Income Reported
Taxalbe Income
1962
$34,960.23
$4,214.65
$30,745.58
1963
16,626.78
9,936.38
6,690.40
1964
13,519.19
10,041.16
3,478.03
1965
17,031.57
8,693.83
8,337.74
1966
29,836.80
16,204.39
13,632.41
1967
29,836.48
11,686.27
18,150.21
1968
57,462.59
14,548.97
42,913.62
1969
30,817.91
23,841.31
6,976.60
*156 For each of said years there was a deficiency in the income tax due from the petitioners in the following amounts: Correct
Tax Liability
Income Tax
Year
Tax Liability
Reported
Deficiency
1962
$11,880.12
$847.22
$11,032.90
1963
4,133.11
2,183.46
1,949.65
1964
2,830.18
1,959.67
870.51
1965
3,548.84
1,532.64
2,016.20
1966
7,816.35
3,317.23
4,499.12
1967
7,816.24
2,190.54
5,625.70
1968
22,526.81
3,114.53
19,412.28
1969
9,018.88
6,170.14
2,848.74
The following specific items of income were omitted from the income tax returns of the petitioners for 1962 through 1969: Year
Interest
Dividends
Capital Gain
Commissions
Total
1962
$ 3,456.83
$ 69.84
$ 67.21
$ 3,593.88
1963
3,097.07
187.41
102.97
3,387.45
1964
546.76
250.96
137.62
935.34
1965
586.11
352.39
215.52
1,154.02
1966
1,082.85
444.21
257.95
$100.00
1,885.01
1967
878.18
878.18
1968
469.34
469.34
1969
Totals
$10,117.14
$1,304.81
$781.27
$100.00
$12,303.22
During the years under consideration, Joseph Agone made deposits and maintained bank accounts or other assets in the names of *157 the following individuals: Marilyn Giamona, Mae Agone, Maria Agone, Ignazzia Agone or Ignazzia Agona, and Phyllis Ingarro or Filomena Ingarro. During the same years, Joseph Agone used the following aliases in the conduct of his affairs: Joe Curley, Joe Moro, Scarface Agone, Tony Agano, Joseph Agoni, Joe Curley Ignaizo, Joe Curley Agone, Joseph Mancuso, Josepi Agone, Josepi Agona and Joseph Agona. During the years 1962 through 1969 Joseph Agone made numerous expenditures through the use of money orders purchased with cash at the Union Savings Bank of Long Island and at the Bowery Savings Bank. He also used cash to make a $6,000 investment in National Investors Corporation and he paid $52,405 in currency for a residence located in Patchogue, New York. In addition to these expenditures in cash he also purchased a condominium in Florida with $16,890 in currency and paid $4,855 in currency for the furnishings located in the condominium. On May 3, 1973, Joseph Agone was indicted in the United States District Court for the Southern District of New York for willfully attempting to evade and defeat income tax due from him for the year 1968 by filing a false and fraudulent return *158 in violation of section 7201. He was also indicted under section 7206(1) with respect to the same return. On September 19, 1973, he pleaded guilty to both counts and on November 1, 1973, the Court entered its judgment of guilty pursuant to the pleas. The statutory notice of deficiency was mailed by the respondent to the petitioners on January 6, 1977. The joint income tax returns of the petitioners for the years 1965, 1966, 1967 and 1969 were filed on or before April 15, 1966, April 15, 1967, April 15, 1968 and April 15, 1970, respectively. With reference to these years the petitioners and the respondent executed agreements in writing pursuant to section 6501(c)(4) which extended the statutory periods for the assessment of income tax due for these years as follows: Agreements for 1965
Date Signed
Extended To
Generally extended
1/24/72
6/30/73
Extended for Sec. 6501(e)
2/13/73
6/30/74
Extended for Sec. 6501(e)
3/7/74
6/30/75
Extended for Sec. 6501(e)
2/19/75
Unlimited
Agreements for 1966
Extended for Sec. 6501(e)
11/21/72
6/30/74
Extended for Sec. 6501(e)
3/7/74
6/30/75
Extended for Sec. 6501(e)
2/19/75
Unlimited
Agreements for 1967
Generally extended
2/16/71
6/30/72
Generally extended
1/24/72
6/30/73
Extended for Sec. 6501(e)
3/7/74
6/30/75
Extended for Sec. 6501(e)
2/19/75
Unlimited
Agreements for 1968
Generally extended
11/21/72
6/30/74
Generally extended
3/7/74
6/30/75
Generally extended
2/19/75
Unlimited
*159 OPINION Deficiencies in Tax
The petitioner has the gurden of proof with espect to the deficiencies in tax. Rule 142(a); . As indicated in our findings, the petitioner died after the petition was filed and before the trial. But his widow, co-petitioner, and next of kin, Nancy Agone, was served with notice of the trial and she, through counsel for the respondent, advised the Court of the death of Joseph Agone and that at his death he owned no assets, that no personal representative has been appointed for him, and that there will be no administration of his estate. Consequently, when the case was called for trial, no appearance was made for the petitioner or for his estate and no proof was offered to rebut the determination of the deficiencies made by the respondent. Under the foregoing circumstances, we have no alternative but to grant the respondent's motion to dismiss the petition for lack of prosecution with respect to the underlying deficiencies in tax against Joseph Agone and to enter a decision for the respondent in the full amount of such deficiencies. Rule 149; ; *160 . Additions to Tax Under Section 6653(b) for Fraud
The respondent has the burden of proof with respect to fraud. Section 7454(a); Rule 142(b). He must carry it with clear and convincing evidence. . To satisfy his burden in this case, the respondent must establish: (1) that for each of the years 1962 through 1969 there was some underpayment in the income tax due from the petitioners; and (2) that some part of the underpayment for each year was due to the fraudulent acts of Joseph Agone. , affg. a Memorandum Opinion of this Court; . To establish that there was an underpayment of tax in each of the years, the respondent made an exhaustive analysis of the net worth of the petitioners at the end of each of the years 1961 through 1969. Such an analysis is an accepted method of reconstructing income where, as here, the taxpayers failed to maintain or produce proper books of accounting. . *161 The method has been approved even where the taxpayer is deceased. Lee v. Commissioner, a Memorandum Opinion of this Court dated February 5, 1953. This analysis together with appropriate adjustments for nontaxable receipts, deductible expenditures, allowable exclusions, and statutory exemptions revealed and we have found that in each of the years 1962 through 1969 there was a substantial underpayment in the income tax due from the petitioners. To establish that some part of the underpayment in each of the aforesaid years is due to fraud on the part of Joseph Agone, the respondent has clearly and convincingly established and we have found that during the years under consideration: (1) Joseph Agone repeatedly demonstrated the knowledge and ability necessary to properly report income by filing returns on which income from wages, dividends, interest and other sources were properly included. See , affg. ; , affg. a Memorandum Opinion of this Court; (2) He failed, however, in each year to report *162 a substantial amount of specific items of income which he obviously knew to be taxable. See ; ; (3) He used various aliases in the conduct of his affairs. See ; (4) He made deposits and maintained bank accounts and other assets in the name of several different individuals. See ; (5) He made numerous expenditures either with cash or with money orders purchased with cash. See ; and (6) Over the eight year period he systematically underpaid his income tax in each year by a substantial amount. See From the overall course of the petitioner's conduct during the years under consideration, as revealed by the above examples, as well as from an examination of the record as a whole, we are convinced that Joseph Agone fraudulently intended to evade and defeat the payment of some part of the deficiency in tax due from him for each of the years 1962 *163 through 1969. ; ; ; , affd. . In addition to the foregoing we have, with respect to the year 1968, the further fact that the petitioner pleaded guilty to having filed a false and fraudulent return in violation of section 7201 for that year. This plea collaterally estops him from denying that he is liable for the addition to tax for 1968 for fraud provided by section 6653(b). , affd. ; ;. For the reasons discussed above, we conclude that the petitioner is liable for the addition to tax provided by section 6653(b) for each of the years 1962 through 1969. Statute of Limitations
We have found that the notice of deficiency was mailed to the petitioner on January 6, 1977. *164 Consequently, the notice was untimely under the general three-year statute of limitations of section 6501(a) because we have also found that the last return in dispute, the one for 1969, was filed on April 15, 1970, which was obviously more than three years before the notice was mailed. This case, however, falls within one of the exceptions to the general statute because the respondent has succeeded in proving that all of the returns were fraudulent. As a result the deficiency notice could have been issued at any time and, therefore, was timely. Section 6501(c). , affd. ; Singleton v. commissioner,, affg. a Memorandum Opinion of this Court. In addition to the exception under section 6501(c) for fraud, the years 1965, 1966, 1967 and 1969 also fall within the six-year statute of limitations provided by section 6501(e) where there is a substantial omission from gross income. This is true because (1) the understatements of taxable income found by us for each of the years 1965, 1966, 1967 and 1969 (page 9, supra) represent more than 25 *165 percent of the gross income reported on the returns for such years (page 3, supra) and (2) the notice of deficiency was issued within the statutory six-year period provided by section 6501(e) as extended by the agreements executed by the respondent and the petitioners pursuant to section 6501(c)(4) (pages 11 and 12, supra). We also conclude, therefore, that the deficiencies in tax and the additions thereto are not barred by the statute of limitations. An appropriate order and decision will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
1a. The record shows that no heirs-at-law of Joseph Agone were interested in or would be affected by the outcome of this case. Cf. .↩
2. Reimbursement for expenses less actual expenses claimed.↩